Thomas L. Vincent, Bar No. 149729
tlv@paynefears.com
Jared De Jong, Bar No. 260921
jdj@paynefears.com
PAYNE & FEARS LLP
Attorneys at Law
4 Park Plaza, Suite 1100
Irvine, California 92614
Telephone: (949) 851-1100
Facsimile: (949) 851-1212

Attorneys for Plaintiff
MICHIGAN MILLERS MUTUAL INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MICHIGAN MILLERS MUTUAL INSURANCE COMPANY, a Michigan corporation,<br><br>Plaintiff,<br><br>v.<br><br>ILLINOIS NATIONAL INSURANCE COMPANY, an Illinois corporation; and Does 1 through 10 inclusive,<br><br>Defendants. | Case No. 2:17-cv-02712<br><br>**COMPLAINT FOR:**<br><br>**(1) EQUITABLE CONTRIBUTION;**<br><br>**(2) EQUITABLE SUBROGATION;**<br><br>**(3) DECLARATORY RELIEF RE DUTY TO DEFEND; AND**<br><br>**(4) DECLARATORY RELIEF RE EQUITABLE APPORTIONMENT OF DEFENSE COSTS**<br><br>**JURY TRIAL DEMANDED** |

COMPLAINT

Plaintiff Michigan Millers Mutual Insurance Company ("Michigan Millers") hereby alleges as follows:

## THE PARTIES

1. At all times mentioned herein, Michigan Millers was and is a Michigan corporation with its principal place of business in Michigan.

2. Michigan Millers is informed and believes, and on that basis alleges, that Defendant Illinois National Insurance Company ("Illinois National") at all times mentioned herein was and is an Illinois corporation with its principal place of business in New York.

3. Michigan Millers is unaware of the true names and capacities of DOES 1 through 10, inclusive, whether individual, corporate, associate or otherwise, and therefore sues these defendants by fictitious names. Michigan Millers is informed and believes, and on that basis alleges, that each of the fictitiously named defendants is in some manner responsible for the damage to Michigan Millers as alleged in this Complaint. Michigan Millers will amend this Complaint to show the true names and capacities of these fictitiously named defendants after the same has been ascertained.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction over this action founded on diversity of citizenship pursuant 28 U.S.C. § 1332, because the matters in controversy exceed $75,000.00, exclusive of interest and costs, and because complete diversity exists between Michigan Millers and Illinois National. As set

forth in more detail below, Michigan Millers and Illinois National are citizens of different states and the amount in controversy includes the $457,180.50 that Michigan Millers paid in defense costs and for which Michigan Millers now seeks reimbursement.

5. Venue is proper in this Court in accordance with 28 U.S.C. § 1391 because the subject matter of this dispute arises from an underlying lawsuit filed in this judicial district.

## GENERAL ALLEGATIONS

### The Underlying *Teleflora* Action

6. On or about May 13, 2015, Teleflora, LLC filed the following Complaint: *Teleflora, LLC v. WB Commerce, LLC d/b/a Wesley Berry Flowers, et al.*, Western Division of United States District Court for the Central District of California, Case Number 2:15-cv-03587-SJO-AJW ("the *Teleflora* Action") (WB Commerce, LLC, Wesley Berry Flowers and Wesley Berry Florists, Inc. are collectively referred to as "Wesley Berry Flowers").

7. The *Teleflora* Action includes four causes of action: (1) False Advertising under 15 U.S.C. § 1125(a); (2) Trademark Infringement under 15 U.S.C. § 1114; (3) Trademark Infringement under 15 U.S.C. § 1125; and (4) Unfair Competition under California Business and Professional Code §§ 17200 and 1755.

8. Among other things, the *Teleflora* Action alleges that Teleflora is a membership-based organization that functions as a full-service business partner for retail florists. It further alleges that Wesley Berry Flowers is a floral delivery

1 company that operates both physical stores and a call center through which it
2 receives and processes telephone and internet flower orders. The *Teleflora* Action
3 also alleges that Wesley Berry Flowers was a member of Teleflora's network and
4 user of its services until Teleflora terminated the relationship, and that, upon
5 termination, Wesley Berry Flowers continued to market, advertise and promote
6 itself and its products on websites using Teleflora's intellectual property, including
7 Teleflora's trademarks.

### The Michigan Millers Policy

9. Michigan Millers issued the following commercial lines insurance policy to Wesley Berry Flowers ("the Michigan Millers Policy"):

| Insurer | Policy Number | Policy Period |
|---|---|---|
| Michigan Millers | C 0118465 06 | 8/20/2014 to 8/20/2015 |

10. Among other things, the Michigan Millers Policy promises to defend and indemnify Wesley Berry Flowers against claims or suits seeking damages for "personal and advertising injury" to which the Michigan Millers Policy applies.

11. Specifically, the Michigan Millers Policy defines "personal and advertising injury" as, among other things, the following:

**SECTION V – DEFINITIONS**

\* \* \*

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

\* \* \*

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

\* \* \*

**f.** The use of another's advertising idea in your

-3-
COMPLAINT

"advertisement"; or
    **g.**    Infringing upon another's copyright, trade dress or slogan in your "advertisement".

12. The Michigan Millers Policy has limits of $1,000,000 for personal and advertising injury, and $2,000,000 for general aggregate—other than products-completed operations.

**The Illinois National Policy**

13. Illinois National issued the following Specialty Risk Protector Policy with Media Content Insurance to Wesley Berry Flowers ("the Illinois National Policy"):

| Insurer | Policy Number | Policy Period |
|---|---|---|
| Illinois National | 01-173-19-33 | 5/20/2014 to 5/20/2015 |

14. Among other things, the Illinois National Policy promises to defend and indemnify Wesley Berry Flowers against claims or suits alleging a "Wrongful Act" to which the Illinois National Policy applies.

15. Specifically, the Illinois National Policy defines "Wrongful Act" as, among other things, the following:

    **2.**    **Definitions**

\* \* \*

(k) "Wrongful Act" means any act, error, omission, negligent supervision or an employee, misstatement or misleading statement by an Insured in connection with Material (including without limitation, any of the foregoing conduct in the gathering, collection, broadcast, creation, distribution, exhibition, performance, preparation, printing, production, publication, release, display, research, or serialization of Material by and Insured) that results solely in:

(1) infringement of copyright, title, slogan, trademark, trade name, trade dress, mark, service mark, service name, infringement of domain

-4-
COMPLAINT

name, deep-linking or framing, including, without limitation, unfair competition in connection with such conduct;

(2) plagiarism, piracy or misappropriation or theft of ideas under implied contract or other misappropriation or theft of ideas or information; including, without limitation, unfair competition in connection with such conduct;

(3) invasion, infringement or interference with rights of privacy or publicity, false light, public disclosure of private facts, intrusion and commercial appropriation of name, persona or likeness; including, without limitation, emotional distress or mental anguish in connection with such conduct;

(4) defamation, libel, slander, product disparagement or trade libel or other tort related to disparagement or harm to character or reputation; including, without limitation, unfair competition, emotional distress or mental anguish in connection with such conduct;

(5) wrongful entry or eviction, trespass, eavesdropping or other invasion of the right to private occupancy, or false arrest, detention or imprisonment or malicious prosecution; including, without limitation, any emotional distress or mental anguish in connection with such conduct;

(6) negligent or intentional infliction of emotional distress, outrage or *prima facie* tort in connection with Material; . . .

\* \* \*

(f) "Material" means media content in any form, including, without limitation, advertising and written, printed, video, electronic, digital or digitized content, of:

(1) broadcasts, including, without limitation, broadcasts via television, motion picture, cable, satellite television, radio, wireless devices or the Internet; or

(2) publication, including, without limitation, publications via newspaper, newsletter, magazine, book and other literary, monograph, brochure, directory, screen play, film script, playwright and video publications.

16. The Illinois National Policy has limits of $1,000,000 with a sublimit of $1,000,000 for Media Content Insurance.

/ / /

/ / /

/ / /

-5-
COMPLAINT

**Michigan Millers and Illinois National Respond to the *Teleflora* Action**

17. Wesley Berry Flowers tendered its defense of the *Teleflora* Action to Michigan Millers and Illinois National under the above referenced Michigan Millers and Illinois National Policies.

18. On or about July 13, 2015, Michigan Millers agreed to defend Wesley Berry Flowers against the *Teleflora* Action, subject to a reservation of rights.

19. On or about July 10, 2015, Illinois National agreed to defend Wesley Berry Flowers against the *Teleflora* Action, subject to a reservation of rights.

20. Notwithstanding the foregoing, on or about August 26, 2015, Illinois National informed Wesley Berry Flowers that Illinois National would not contribute money toward the defense of the *Teleflora* Action because Michigan Millers had also agreed to provide Wesley Berry Flowers with a defense.

21. Michigan Millers defended Wesley Berry Flowers against the *Teleflora* Action until the case was dismissed on or about August 4, 2016.

22. Michigan Millers spent at least $457,180.50 defending Wesley Berry Flowers against the *Teleflora* Action.

23. Pursuant to the terms and conditions of the Illinois National policies, Illinois National owes a primary duty to pay the defense fees and costs that Michigan Millers incurred in defending the *Teleflora* Action.

24. Illinois National's primary duty to defend the *Teleflora* Action under

the Illinois National Policy is not altered or diminished based on whatever duties Michigan Millers may owe to defend the *Teleflora* Action under the Michigan Millers Policy.

25. To date, Illinois National has not contributed money toward the defense of the *Teleflora* Action, nor is Illinois National willing to reimburse Michigan Millers for some or any of the defense costs that Michigan Millers incurred defending the *Teleflora* Action.

## FIRST CAUSE OF ACTION

### Equitable Contribution

(By Michigan Millers Against All Defendants)

26. Michigan Millers hereby re-alleges the allegations contained in paragraphs 1 through 25, inclusive, and incorporates them by reference as though fully set forth herein.

27. Because Illinois National owes a primary duty to defend the *Teleflora* Action, Illinois National was legally obligated to provide Wesley Berry Flowers with a defense to the *Teleflora* Action, even if Michigan Millers—Illinois National's co-insurer—was legally obligated to do the same.

28. Illinois National failed to pay defense costs or contribute money toward Wesley Berry Flowers' defense of the *Teleflora* Action.

29. As a consequence, Michigan Millers paid in excess of its equitable share, if any, of Wesley Berry Flowers' defense of the *Teleflora* Action.

30. Because Michigan Millers paid more than its fair share of defense costs, Michigan Millers is entitled to contribution from Illinois National for an equitable share of the costs that Michigan Millers incurred defending the *Teleflora* Action.

## SECOND CAUSE OF ACTION

### Equitable Subrogation

(By Michigan Millers Against All Defendants)

31. Michigan Millers hereby re-alleges the allegations contained in paragraphs 1 through 30, inclusive, and incorporates them by reference as though fully set forth herein.

32. This claim for equitable subrogation is pled in the alternative to the claim for equitable contribution.

33. The Illinois National Policy provides coverage to Wesley Berry Flowers that is *specific* in nature. On the other hand, the Michigan Millers Policy provides coverage to Wesley Berry Flowers that is *general* in nature.

34. Because the Illinois National Policy is a specific risk insurance policy and the Michigan Millers Policy is a general risk insurance policy, Illinois National is obligated to pay all defense costs related to the *Teleflora* Action up to Illinois National's policy limit before Michigan Millers is obligated to pay anything at all.

35. Because Michigan Millers paid to defend and indemnify Wesley Berry Flowers against a loss for which Illinois National—as a specific-risk insurer—was solely responsible, Michigan Millers is equitably subrogated to Wesley Berry

Flowers' rights and stands in Wesley Berry Flowers' shoes to recover from Illinois National the *entire* cost of defending the *Teleflora* Action.

## THIRD CAUSE OF ACTION

### Declaratory Relief Re Illinois National's Duty to Defend

(By Michigan Millers Against Illinois National)

36. Michigan Millers hereby re-alleges the allegations contained in paragraphs 1 through 35, inclusive, and incorporates them by reference as though fully set forth herein.

37. An actual controversy has arisen and now exists between Michigan Millers, on the one hand, and Illinois National, on the other hand, in that Michigan Millers contends that under the Illinois National Policy, Illinois National owed a primary and independent duty to defend Wesley Berry Flowers in the *Teleflora* action.

38. Michigan Millers is informed and believes that Illinois National contends otherwise.

39. Michigan Millers desires a judicial determination as follows:

    a. that Illinois National owes a duty to defend Wesley Berry Flowers against the *Teleflora* Action under the Illinois National Policy;

    b. that Illinois National's duty to defend the *Teleflora* Action is primary;

    c. that Illinois National's obligation to defend the *Teleflora* Action is not diminished or reduced simply because Michigan Millers may owe the same duty.

40. A declaratory judgment is both proper and necessary so that the

respective rights, duties, and obligations of Michigan Millers and Illinois National may be determined.

## FOURTH CAUSE OF ACTION

**Declaratory Relief Re Equitable Apportionment of Defense Costs**

(By Michigan Millers Against Illinois National)

41. Michigan Millers hereby re-alleges the allegations contained in paragraphs 1 through 40, inclusive, and incorporates them by reference as though fully set forth herein.

42. An actual controversy has arisen and now exists between Michigan Millers, on the one hand, and Illinois National, on the other hand, in that Michigan Millers contends the costs it incurred defending Wesley Berry Flowers in the *Teleflora* action should be apportioned between Michigan Millers and Illinois National based on principles of equity.

43. Michigan Millers is informed and believes that Illinois National contends otherwise.

44. Michigan Millers desires a judicial determination as follows:

    a.    a declaration regarding the respective rights and obligations of Michigan Millers and Illinois National to share the cost of defending Wesley Berry Flowers against the *Teleflora* Action.

45. A declaratory judgment is both proper and necessary so that the respective rights, duties, and obligations of Michigan Millers and Illinois National may be determined.

# PRAYER

WHEREFORE, Michigan Millers prays for judgment against Defendants as follows:

1. **FIRST CAUSE OF ACTION**:
   a. For general and specific damages in an amount to be proven at trial;
   b. For all costs and expenses at the full extent permitted by law;
   c. For pre-judgment interest and post-judgment interest at the full extent permitted by law; and
   d. For attorneys' fees to the extent recoverable by applicable law; and
   e. For such other and further relief as the Court deems fair and proper.

2. **SECOND CAUSE OF ACTION**:
   a. For general and specific damages in an amount to be proven at trial;
   b. For all costs and expenses at the full extent permitted by law;
   c. For pre-judgment interest and post-judgment interest at the full extent permitted by law;
   d. For attorneys' fees to the extent recoverable by applicable law; and
   e. For such other and further relief as the Court deems fair and proper.

3. **THIRD CAUSE OF ACTION**:
   a. For declaratory relief as described above;
   b. For all costs and expenses at the full extent permitted by law;
   c. For pre-judgment interest and post-judgment interest at the full

extent permitted by law;

d. For attorneys' fees to the extent recoverable by applicable law; and

e. For such other and further relief as the Court deems fair and proper.

**FOURTH CAUSE OF ACTION**:

a. For declaratory relief as described above;

b. For all costs and expenses at the full extent permitted by law;

c. For pre-judgment interest and post-judgment interest at the full extent permitted by law;

d. For attorneys' fees to the extent recoverable by applicable law; and

e. For such other and further relief as the Court deems fair and proper.

**JURY DEMAND**

Michigan Millers hereby demands a trial by jury pursuant to Fed. R. Civ. Proc. 38(b) on all issues so triable.

DATED: April 10, 2017          PAYNE & FEARS LLP

By:   */s/ Thomas L. Vincent*
        THOMAS L. VINCENT
        JARED DE JONG

Attorneys for Plaintiff MICHIGAN MILLERS MUTUAL INSURANCE COMPANY

4834-5380-8710.1