JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

<u>**CIVIL MINUTES -- GENERAL**</u>

Case No.   **CV 17-2712-JFW(AFMx)**                    Date:  July 24, 2017

Title:      Michigan Millers Mutual Insurance Company -*v*- Illinois National Insurance Company

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

Cheryl Wynn                                         None Present
Relief Courtroom Deputy                             Court Reporter

**ATTORNEYS PRESENT FOR PLAINTIFFS:**    **ATTORNEYS PRESENT FOR DEFENDANTS:**
             None                                                          None

**PROCEEDINGS (IN CHAMBERS):**         **ORDER GRANTING DEFENDANT ILLINOIS NATIONAL**
                                        **INSURANCE COMPANY'S MOTION TO DISMISS**
                                        **[filed 6/9/2017; Docket No. 30]**

On June 9, 2017, Defendant Illinois National Insurance Company ("Defendant" or "Illinois National") filed a Motion to Dismiss.  On June 26, 2017, Plaintiff Michigan Millers Mutual Insurance Company ("Plaintiff" or "Michigan Millers") filed its Opposition.  On July 3, 2017, Illinois National filed a Reply.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument.  The matter was, therefore, removed from the Court's July 17, 2017 hearing calendar and the parties were given advance notice.  After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Michigan Millers seeks reimbursement of defense costs from Illinois National, a co-insurer of Wesley Berry Florists Inc. ("WBF").  Michigan Millers paid over $450,000.00 to defend WBF (and related entities) against a federal lawsuit (the "Underlying Action") that alleged the following claims for relief: (1) false advertising under 15 U.S.C. § 1125(a); (2) trademark infringement under 15 U.S.C. § 1114; (3) trademark infringement under 15 U.S.C. § 1125; and (4) unfair competition under California Business & Professions Code §§ 17200 and 17500.  The Underlying Action was dismissed on or about August 4, 2016 without any determination of liability.

Both Michigan Millers and Illinois National initially agreed to defend WBF in the Underlying Action, subject to a reservation of rights.  However, after Michigan Millers agreed to defend WBF, Illinois National took the position that its policy was excess to any coverage provided under the Michigan Millers policy based on the respective "other insurance" provisions in each policy, and thus that it had no obligation to defend WBF in the Underlying Action until the limits of the Michigan

Initials of Deputy Clerk _cw_

Millers policy were exhausted.  Because the limits of the Michigan Millers policy were never exhausted, Illinois National did not defend or contribute to the defense of WBF.

On April 10, 2017, Michigan Millers filed a Complaint against Illinois National, seeking reimbursement of defense costs.  In its First Amended Complaint filed on May 19, 2017, Michigan Millers alleges the following claims for relief against Illinois National: (1) equitable contribution; (2) equitable subrogation; (3) equitable indemnity; (4) declaratory relief re: Illinois National's duty to defend; and (5) declaratory relief re: equitable apportionment of defense costs.  Michigan Millers pleads its claims for equitable contribution, equitable subrogation, and equitable indemnity in the alternative, and contends that California law applies.

Illinois National moves to dismiss on the grounds that: (1) Michigan law, not California law, applies; and (2) under Michigan law, Michigan Millers' policy is primary, and Illinois National's policy is excess, such that no contribution is owed to Michigan Millers as a matter of law.

In order to determine whether dismissal is appropriate, the Court must first examine the language of the relevant policies.

### Michigan Millers Policy

Michigan Millers issued a commercial general insurance policy ("CGL") to WBF for the policy period between August 20, 2014 through August 20, 2015 (the "Michigan Millers Policy").

The Michigan Millers Policy covers WBF against "property damage," "bodily injury," and "personal and advertising injury."  Michigan Millers claims that its policy does not cover WBF for trademark infringement.

The Michigan Millers Policy includes a standard duty to defend provision.  It also includes an "Other Insurance" provision[1] which provides in relevant part:

**4.      Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

**a.      Primary Insurance**

This insurance is primary except when **b.** below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in **c.** below.

---

[1] "'Other insurance' clauses are provisions inserted in insurance policies to vary or limit the insurer's liability when additional insurance coverage can be established to cover the same loss." *St. Paul Fire & Marine Ins. Co. v. American Home Assurance Co.*, 444 Mich. 560, 564 (1994).

Initials of Deputy Clerk _cw_

Declaration of Martha S. Keane, Exhibit 2 at 245.  It is undisputed that none of the exceptions in Section 4(b) apply.

**Illinois National Policy**

Illinois National issued a Specialty Risk Protector Policy with Media Content Insurance to WBF for the policy period between May 20, 2014 through May 20, 2015 ("Illinois National Policy"). Illinois National's media liability coverage insures WBF against claims and suits alleging, *inter alia*, trademark infringement.  The Illinois National Policy also includes a standard duty to defend provision.  The Illinois National Policy also has an "Other Insurance" provision, which provides:

> **12.**   Such insurance as is provided by this policy shall apply only as excess over any other valid and collectible insurance, unless such other insurance is expressly written to be excess over the **Limit of Liability**  or any applicable **Sublimit of Liability** provided by this policy.

Declaration of Martha S. Keane, Exhibit 1 at 14.

## II.   LEGAL STANDARD

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  "A Rule 12(b)(6) dismissal is proper only where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F. Supp. 299, 304 (C.D. Cal. 1996) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)).  However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted).  "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

In deciding a motion to dismiss, a court must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party.  *See, e.g., Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Summit Technology*, 922 F. Supp. at 304 (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981)).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) (citations omitted).  However, a court may consider material which is properly submitted as part of the complaint and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201 without converting the motion to dismiss into a motion for summary

judgment. *See, e.g., id.*; *Branch v. Tunnel*, 14 F.3d 449, 454 (9th Cir. 1994).[2]

Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend. Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g., DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). However, a Court does not need to grant leave to amend in cases where the Court determines that permitting a plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

## III.    DISCUSSION

The Court's ruling on the issues presented in this Motion to Dismiss depends upon whether the Court strictly applies the express language of the policies' "other insurance" provisions. In order to make that determination, the Court must address and resolve the following issues: (1) do the insurance policies cover the "same risk" such that the "other insurance" provisions are applicable?; (2) does the law of California or Michigan apply?; and (3) does the law of the applicable State strictly reconcile and enforce competing "other insurance" provisions?

### A.    The Insurance Policies Cover the "Same Risk".

As an initial matter, Michigan Millers argues that the Court need not analyze the "other insurance" provisions of the policies because such "other insurance" provisions are only applicable where the insurance policies cover the "same risk."[3]  In other words, Michigan Millers argues that because the Michigan Millers Policy and the Illinois National Policy do not cover the same risks, the "other insurance" provisions are irrelevant and cannot be used to defeat Michigan Millers' claims.

The Court agrees that, under both California and Michigan law, "other insurance" provisions are only relevant when two or more insurance policies cover the same risk or loss. *See Dart Indus., Inc. v. Commercial Union Ins. Co.*, 28 Cal. 4th 1059, 1079 n.6 (2002) (internal quotations and citations omitted) ("'Other insurance' clauses 'limit an insurer's liability to the extent that other insurance may cover the same loss. 'Other insurance' clauses become relevant only were several insurers insure the same risk at the same *level* of coverage. An 'other insurance' dispute cannot arise between excess and primary insurers."); *Carmel Dev. Co. v. RLI Ins. Co.*, 126 Cal. App. 4th 502, 509 (2009) ("Only if two policies were insuring the same risk at the same level of coverage will we proceed to determine whether the 'other insurance' clauses conflicted and thus required

---

[2]In this case, the parties agree that the Court may consider Exhibits 1 through 5 attached to the Declaration of Martha S. Keane and Exhibits 6 and 7 attached to Illinois National's Request for Judicial Notice, without converting the Motion to Dismiss into a Motion for Summary Judgment.

[3]Michigan Millers contends, and the Court agrees, that there is no need for the Court to engage in a choice-of-law analysis on this issue, because there is no material conflict of law between California and Michigan. If there were a material conflict, the Court would apply Michigan law for the reasons stated *infra*.

Initials of Deputy Clerk   cw

equitable proration."); *Secura Ins. Co. v. Cincinnati Ins. Co.*, 198 Mich. App. 243, 247 (1993) (noting that "other insurance" clauses only become relevant where "the named insured was the same person on both policies and insured against the same risk, and either of the policies would cover the loss if the other did not exist."); *Pioneer State Mut. Ins. Co. v. TIG Ins. Co.*, 229 Mich. App. 406, 411 (1998) ("Disputes arise, as in this case, when two or more insurance policies covering the same risk contain such 'other insurance' provisions.").

However, contrary to Michigan Millers' argument, the Court concludes that the Michigan Millers Policy and the Illinois National Policy *do* cover the same *relevant* risk -- the duty to defend the Underlying Action -- such that the "other insurance" provision is implicated.  Indeed, both the Michigan Millers Policy and the Illinois National Policy provide that the insurer has a duty to defend a suit which seeks damages covered by the policy. And, both California and Michigan law construe that duty to defend broadly: An insurer's duty to defend extends to a suit which potentially seeks damages within the coverage of the policy. *See Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287, 295 (1993); *Protective Nat. Ins. Co. of Omaha v. City of Woodhaven*, 438 Mich. 154, 159  (1991).  Moreover, "when the third party suit includes some claims that are potentially covered, and some that are clearly outside the policy's coverage, the law nonetheless implies the insurer's duty to defend the entire action." *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 997–98 (2015); *see also Auto Club Grp. Ins. Co. v. Burchell*, 249 Mich. App. 468, 481 (2001) (quotations and citations omitted) ("[A]n insurer has a duty to defend, despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy.").

In this case, Michigan Millers determined, consistent with its obligations under California and Michigan law, that it had a duty to defend the entire Underlying Action, because the facts, as alleged, in the Underlying Action could be amended to assert a covered claim in the future. *See* First Amended Complaint at ¶ 6; *see also Atl. Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1034 (2002) ("The scope of the duty does not depend on the labels given to the causes of action in the third party complaint; instead it rests on whether the alleged facts or known extrinsic facts reveal a possibility that the claim may be covered by the policy."); *Protective Nat. Ins. Co. of Omaha v. City of Woodhaven*, 438 Mich. 154, 159 (1991) (quotations and citations omitted) ("The duty to defend cannot be limited by the precise language of the pleadings.  The insurer has the duty to look behind the third party's allegations to analyze whether coverage is possible."). Likewise, Illinois National also acknowledged that it had a duty to defend the Underlying Action under the language of its policy absent Michigan Millers' decision to defend the Underlying Action. *See* Declaration of Martha S. Keane at Exhibit 3.  Accordingly, the Court concludes that the two insurance policies covered the same risk or loss, i.e., the defense of the Underlying Action.

Notwithstanding the fact that both policies covered (or would have covered) the defense of the Underlying Action, Michigan Millers contends that the policies did not cover the same risk. Specifically, Michigan Millers argues that the policies covered different risks because its policy did not insure WBF against trademark infringement, whereas Illinois National's policy did.   Although that may be an accurate statement, it misses the point. The relevant risk is the defense of the Underlying Action.

The parties did not cite, and the Court, in its independent research, could not find any California or Michigan cases directly on point.  However, the Court finds out-of-state authority, and,

Initials of Deputy Clerk _cw_

specifically, *Fieldston Property Owners Association, Inc. v. Hermitage Insurance Co.*, 16 N.Y.3d 257 (2011), instructive.  In that case,  New York's Court of Appeals concluded that the Federal Insurance Company's "other insurance" clause was applicable and that Federal Insurance Company had no duty to defend the underlying action, even though Federal Insurance Company's insurance policy insured against losses arising from different claims for relief than Hermitage Insurance Company's policy.[4]  Relying on the plain language of the policies and the broad duty to defend, it explained:

> [A] "primary insurer has the primary duty to defend on behalf of its insureds," and it generally has no "entitlement to contribution from an excess insurer[.]"  Although an excess insurer carrier may elect to participate in an insured's defense to protect its interest, it has 'no obligation to do so'.

> As relevant here, Federal's  D & O policy provides that its coverage is excess where 'any Loss arising from any claim made against the Insured(s) is insured under any other valid policy(ies)."  "Loss" as defined in the D & O policy includes "Defense Costs."  Based on the broad duty to defend, and upon the conceded possibility that Hermitage's CGL policy covers at least one cause of action in each of the two underlying complaints, Hermitage has a duty to provide a defense to the entirety of both complaints.  Thus, under the terms of Federal's D & O policy, there does exist "other insurance" which would cover the "loss" arising from the defense of the two underlying actions.  Accordingly, Hermitage had an obligation to defend both of the underlying actions without contribution from Federal, notwithstanding the fact that Federal would appear to have an obligation to indemnify Fieldston for a greater proportion of the causes of action, if successfully prosecuted.

*Fieldston*, 16 N.Y.3d at 265 (internal citations omitted).  In other words, even though Hermitage's policy provided coverage for losses arising out of only one cause of action, whereas Federal's policy provided coverage for losses arising out of the remaining causes of action, *both* policies would have provided coverage for the defense costs had the other policy not existed.  Thus, the New York Court of Appeals strictly applied the "other insurance" provisions and held that Hermitage had an obligation to defend the underlying actions without *any* contribution from Federal.  Likewise, in this case, even though the Illinois National Policy covers WBF for trademark infringement whereas the Michigan Millers Policy may not, both policies cover (or would have covered) defense costs.

For the foregoing reasons, the Court concludes that the Michigan Millers Policy and the Illinois National Policy cover the same risk or loss, i.e., the defense of the Underlying Action, such that the Court must analyze the "other insurance" provisions in both policies.

**B.    Michigan Law Applies.**

---

[4]Indeed, the lower court concluded:  "With the possible exception of the injurious falsehood claims, all the other losses . . . that could result from the other causes of action are not insured under [Hermitage's] CGL policy but at least some of them are insured under [Federal's] D&O Policy."  *Fieldston Property Owners Association, Inc. v. Hermitage Insurance Co.*, 16 N.Y.3d 257, 263 (2011)

Initials of Deputy Clerk  cw

Before interpreting the "other insurance" provisions, the Court must first determine whether to apply California or Michigan law.  Illinois National contends that Michigan law applies, whereas Michigan Millers contends that California law applies.

"Federal courts sitting in diversity must apply the forum state's choice of law rules to determine the controlling substantive law." *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005) (internal citations and quotations marks omitted); *Hoffman v. Citibank (S. Dakota), N.A.*, 546 F.3d 1078, 1082 (9th Cir. 2008). Accordingly, in this case, the Court applies California's choice of law rules to determine the controlling substantive law.  When parties to a contract have not included an effective choice of law provision in their agreement, California courts have applied two different choice of law tests.  In matters involving the interpretation of a contract, California courts apply California Civil Code § 1646.  *See Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436, 1459-60 (2007), as modified (Sept. 5, 2007).  In all other matters, courts apply California's three-part governmental interest test.  *See id.* at 1459; *Arno v. Club Med. Inc.*, 22 F.3d 1464, 1467 (9th Cir. 2007).

Illinois National argues that the Court should apply California Civil Code § 1646, whereas Michigan Millers argues that the Court should apply the governmental interest test.  The Court concludes that it is unnecessary to resolve this dispute because, under both California Civil Code § 1646 and California's governmental interest test, the Court concludes that Michigan law applies.

      1.    <u>Michigan law applies under California Civil Code § 1646.</u>

California Civil Code § 1646 provides:

A contract is to be interpreted according to the law and usage of the place where it is to be performed; or if it does not indicate a place of performance, according to the law and usage of the place where it is made.

In this case, neither of the policies indicate a specific place of performance but rather provide coverage for losses and claims suffered in the entire United States, and in certain situations, anywhere in the world.  Accordingly, the Court must look to the law of the place the policies were made.  "A contract is 'made' in the place of acceptance." *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1197 (S.D. Cal. 2007) (citing *ABF Capital Corp. v. Grove Properties Co.*, 126 Cal.App.4th 204, 222 (2005)). The Court concludes, and Michigan Millers does not dispute, that the Michigan Millers Policy and Illinois National Policy were made in Michigan. Indeed, the insured under both policies, WBF, is a Michigan corporation organized under the laws of the State of Michigan.  The mailing addresses for WBF listed in the policies are in Michigan.   Accordingly, because the two policies were presumably accepted in Michigan, the policies were made in Michigan.  Thus, pursuant to California Civil Code § 1646, Michigan law applies to the interpretation of the two policies.

      2.    <u>Michigan law applies under California's governmental interest test</u>.

To the extent that California's governmental interest applies instead of § 1646, the Court concludes that Michigan law applies under that test as well.  California's governmental interest test

consists of three steps:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

*Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 107-108 (2006) (quotations and citations omitted). "The party advocating the application of a foreign state's law bears the burden of identifying the conflict between that state's law and California's law on the issue, and establishing that the foreign state has an interest in having its law applied." *Pokorny v. Quixtar*, 601 F.3d 987, 995 (9th Cir. 2010) (citing *Wash. Mutual Bank, FA v. Superior Court*, 24 Cal. 4th 906, 920 (2001)).

First, the Court concludes that the law of Michigan differs from the law of California on the interpretation of and enforceability of "other insurance" provisions. Under Michigan law, "pro rata" insurance provisions and excess "other insurance" provisions are viewed as reconcilable, and courts give effect to the intent of the contracting parties. *St. Paul Fire & Marine Ins. Co. v. American Home Assurance Co.*, 444 Mich. 560, 570-577 (1994). "The result, under this view, is that the excess insurer is generally liable for the loss only to the extent that the insured's claim exceeds the policy limits of the insurance policy containing the pro-rata 'other insurance' clause." *Id.* at 573. In contrast, California courts, following the "modern trend", do not enforce broad excess "other insurance" provisions, and instead require equitable contributions on a pro rata basis from all primary insurers. *See, e.g., Certain Underwriters at Lloyds, London v. Arch Specialty Ins. Co.*, 246 Cal. App. 4th 418, 429 (2016)*, as modified on denial of reh'g* (May 10, 2016); *Dart Indus., Inc. v. Commercial Union Ins. Co.*, 28 Cal. 4th 1059, 1080 (2002). Indeed, "[California] courts have repeatedly addressed—and rejected—arguments by insurers that an 'other insurance' clause in their insuring agreement permitted them to evade their obligations by shifting the entire burden associated with defending and indemnifying a mutual insured onto a coinsurer." *Underwriters of Interest Subscribing to Policy No. A15274001 v. ProBuilders Specialty Ins. Co.*, 241 Cal. App. 4th 721, 730, *as modified on denial of reh'g* (Nov. 13, 2015).

However, the Court concludes that Michigan's interest in applying its law is far greater than California's minimal interest, if any, in applying its law under the circumstances of this case. Indeed, Michigan has a strong interest in ensuring that insurance policies entered into in Michigan and issued to Michigan residents are interpreted uniformly under its laws. Moreover, one of the two insurers is a Michigan entity with its principal place of business in Michigan. In contrast, California has virtually no interest in applying its law in this case, especially where neither of the insurers, nor the insured, reside in California and where the only connection to California is that the Underlying Action was filed in California. Accordingly, because Michigan's interest in the application of its own law would be more impaired if its policy were subordinated to the policy of California, the Court applies Michigan law.

**C.      Under the Law of Michigan, Illinois National's "Other Insurance" Provision is Enforceable and Illinois National is Not Responsible for Defense Costs.**

As briefly discussed *supra*, Michigan courts "refrain from rewriting [insurance] contracts and instead give effect to the meaning and intent of the policy language."  *St. Paul Fire & Marine Ins. Co.*, 444 Mich. at 570.  As such, they attempt to reconcile competing "other insurance" provisions if possible.  *Id.* at 562

In this case, the pro rata "other insurance" provision in the Michigan Millers Policy is reconcilable with the excess "other insurance provision in the Illinois National Policy.  Indeed, the Michigan Millers' "other insurance" provision provides that it is primary insurance (except under certain exceptions not applicable here), and that is obligations are not affected unless any of the "other valid and collectible insurance" is also primary.  If any of the other valid and collectible insurance is also primary, Michigan Millers "will share with all that other insurance . . . ."  Declaration of Martha S. Keane, Exhibit 2 at 245.  Michigan Millers' "other insurance" provision is commonly known as a pro rata provision. It is "intended to become effective only when other valid and collectible primary insurance is available."  *St. Paul Fire & Marine Ins. Co.*, 444 Mich. at 567.

In contrast, the Illinois National Policy's "other insurance" provision provides:  "Such insurance as is provided by this policy shall apply only as excess over any other valid and collectible insurance, unless such other insurance is expressly written to be excess over the **Limit of Liability**  or any applicable **Sublimit of Liability** provided by this policy."  Declaration of Martha S. Keane, Exhibit 1 at 14.  Illinois National's"other insurance" provision is commonly known as an excess "other insurance" provision. "[I]t is generally the insurer's intent that the policy only afford secondary coverage when the same loss is covered by 'other insurance.'"  *Id.* at 568.

As the Michigan Supreme Court held in *St. Paul Fire & Marine Ins. Co. v. American Home Assurance Co.*, 444 Mich. 560 (1994), these two types of "other insurance" provisions are reconcilable.  "[T]he excess insurer is generally liable for the loss only to the extent that the insured's claim exceeds the policy limits of the insurance policy containing the pro-rata 'other insurance' clause."  *Id.* at 573.  Citing the reasoning of *Jones v. Medox, Inc.*, 430 A.2d 488 (D.C. App. 1981), the Michigan Supreme Court explained:

> In order to reconcile a pro-rata and an excess "other insurance" clause, the *Jones* court reasoned that the policies containing a pro-rata clause are effective only when "other valid and collectible" primary insurance is available.  On the other hand, a policy containing an excess "other insurance" clause is not considered to be other valid and collectible primary insurance for the purpose of triggering the operation of the pro-rata clause.  Consequently, the policy containing the excess clause becomes secondary coverage because the carrier is liable only for the loss after the primary insurer has paid up to its policy limits.

*Id.* at 574-75.

Accordingly, based on the plain language of the policies, the Court concludes that the Illinois National Policy is excess to the primary insurance provided by Michigan Millers.  As such, Illinois National is only liable for defense costs with respect to the Underlying Action *after* the limits of the

Michigan Millers Policy have been exhausted.  Because Michigan Millers has not exceeded its policy limits, Illinois National is not liable for any of the defense costs incurred in the defense of the Underlying Action.

## IV.    CONCLUSION

For the foregoing reasons, Illinois National's Motion to Dismiss is **GRANTED** and Michigan Millers' First Amended Complaint is **DISMISSED with prejudice**.


IT IS SO ORDERED.

Initials of Deputy Clerk   cw